IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RONALD NICHOLAS GERACI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-2066 |
| | ) | |
| HARBOR FREIGHT TOOLS USA, INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiff Ronald Nicholas "Nick" Geraci, by and through his undersigned counsel of record

for his demand for damages against Defendant Harbor Freight Tools USA, Inc., states as follows:

### <u>Parties, Jurisdiction, and Venue</u>

1.      Plaintiff Nick Geraci is a resident of the State of Kansas, living in Johnson County,

Kansas.

2.      Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight") is a privately held

corporation organized and existing under the laws of the State of Delaware, with its headquarters

and principal place of business in the State of California. Defendant Harbor Freight is registered

to do business in the State of Kansas and maintains a registered agent for service of process in the

State of Kansas. Additionally, defendant Harbor Freight also operates "brick-and-mortar" retail

stores for its tools within the State of Kansas, including Harbor Freight store # 619 in Olathe,

Kansas where Plaintiff Nick Geraci purchased the breaker bar tool at issue in this case.

3.      Defendant Harbor Freight designed, manufactured, marketed, promoted, and sold

the "Pittsburgh Pro" labeled, 3/8-inch drive, 18-inch long ratcheting breaker bar ("breaker bar")

that is the subject of this lawsuit.

4.      Defendant Harbor Freight was present and transacted, solicited, and conducted business in Kansas, through its employees, agents and/or sales representatives and derived revenue from its business in the State of Kansas.

5.      Defendant Harbor Freight maintains a highly interactive website that can be visited by residents of the State of Kansas and which was directed at consumers in Kansas and elsewhere for Harbor Freight's expected profit.

6.      At all times relevant to the claims herein, Defendant Harbor Freight placed the defective subject breaker bar into the stream of interstate commerce knowing and expecting that it would end up in the State of Kansas and cause injury in Kansas to residents of the State of Kansas. Defendant Harbor Freight purposefully directed marketing and sales efforts toward the State of Kansas and had the intent to sell products, including the subject breaker bar, in the State of Kansas.

7.      Accordingly, Defendant Harbor Freight is conclusively presumed to have been doing business in this state and subject to Kansas long arm jurisdiction.

8.      On information and belief, Defendant Harbor Freight also either owns and/or leases real estate in the State of Kansas for its multiple retail stores in Kansas and entered into other contracts in the State of Kansas in connection with its retail operations in the State.

9.      In addition to its store #619 in Olathe, Kansas that sold the subject defective breaker bar, Defendant Harbor Freight also maintains the following retail stores in Kansas: store #74 in Topeka, Kansas; store #3261 in Lansing, Kansas; store #2949 in Lawrence, Kansas; store #186 in Shawnee, Kansas; store #3230 in Frontenac, Kansas; store #2942 in Manhattan, Kansas; store #75 in Wichita, Kansas; store #882 in North Wichita, Kansas; store #741 in Hutchinson, Kansas; store #3835 in Hays, Kansas; store #3218 in Dodge City, Kansas, and store #788 in Garden City, Kansas.

10.     Defendant Harbor Freight therefore has continuous, systematic, and substantial contacts with the State of Kansas by virtue of maintaining its many retail stores in Kansas as outlined above, among other activities within the State which confer on this Court general personal jurisdiction over Defendant Harbor Freight as well as specific personal jurisdiction.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as the case is between a citizen of a U.S. State and a citizen or subject of a foreign state, and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

12.     This action arises out of an incident that occurred in Stilwell Kansas in Johnson County.  Therefore, Venue is proper in this Court pursuant to 28 U.S.C. §§ 96 and 1391.

## Facts Common to All Counts

13.     In November of 2022, Plaintiff Nick Geraci went into Harbor Freight store #619 in Olathe, Kansas and purchased, among other tools, the subject Pittsburgh Pro 3/8-inch drive ratcheting breaker bar with 18-inch handle, for his use working on his pickup truck at home.

14.     On January 2nd, 2023, Plaintiff Nick Geraci was using the subject breaker bar to loosen a lug nut on his GMC Sierra pickup truck as he was doing a tire rotation. When using the breaker bar as intended to loosen one of the lug nuts, the metal in the ratcheting mechanism on the breaker bar suddenly and without warning fractured, sending sharp jagged pieces of metal flying into Mr. Geraci's left eye, leaving him with serious injuries that have necessitated multiple surgeries, will require additional surgeries in the future and have left him with permanent injuries that include pain, suffering, disfigurement, and loss of eyesight in his left eye.

15.     The subject breaker bar was designed, manufactured, tested, sold, distributed, and marketed by Defendant Harbor Freight.

16.    A picture and description from Defendant Harbor Freight's website of a ratcheting breaker bar believed to be the same or very similar to the one that Mr. Garaci was using when he was injured on January 2nd, 2023.[1]

**PITTSBURGH PRO**

3/8 in. Drive 18 in. Ratcheting
Breaker Bar

☆☆☆☆☆ (531) ⌄    Write a Review

This breaker bar features a ratchet head that swivels
180 degrees

$19⁹⁹



## PRODUCT OVERVIEW ────────────────

This breaker bar has reversible ratcheting action plus the option to lock the ratchet mechanism for use as a traditional breaker bar. The 3/8 in. drive ratchet head swivels 180 degrees. Made of for extreme durability.

> Left/right reversible ratcheting action
> Head locks in place for use as a standard breaker bar
> Heavy duty chrome plated chrome vanadium steel

17.    Mr. Geraci relied on Defendant Harbor Freight's representations about the strength and durability of the subject breaker bar – on information and belief, the representations in the

---

[1] https://www.harborfreight.com/hand-tools/sockets-ratchets/3-8-eighth-inch-drive-ratcheting-breaker-bar-66388.html

store were similar to those on the website, that it was "[m]ade for extreme durability" and constructed out of "[h]eavy duty chrome plated chrome vanadium steel," and generally that it was robust and strong enough to be safely used as a breaker bar – when purchasing it.

18.     Breaker bars are a special type of socket driving tool that is used when large amounts of force and torque are needed to tighten or loosen a fastener, with the lug nut on a car or truck's wheels being the most common use for such a tool. Breaker bars are equipped with a handle that is significantly longer than other ratchets to provide the user with the necessary leverage to break loose bolts that require a large amount of torque to tighten or, more frequently, remove. The makers and sellers of breaker bars, including Harbor Freight, know that this type of tool must be very robust and strong to endure its expected and intended uses.

19.     The subject breaker bar sold by Defendant Harbor Freight is at least somewhat unique on the marketplace in that it incorporated a cylindrical ratcheting mechanism at the end of it – shown by red arrows in picture above. Many, if not most, breaker bars do not have a ratcheting function and have a swiveling socket attachment that is otherwise fixed. On information and belief, the reason that most breaker bars do not ratchet and are fixed is due to the strength that is required for a breaker bar application, and many ratcheting mechanisms are not typically up to the stress and strain that is experienced by breaker bars given their very purpose. It is most common for a breaker bar to be used to "break loose" a very tight fastener first, and then switch to a ratchet to finish removing it once loosened, or for use when tightening the fastener.

20.     Defendant Harbor Freight received notice that its ratcheting breaker bars like the one purchased by Plaintiff Nick Geraci were defective and unreasonably dangerous at least in part because many of its customers posted reviews on Harbor Freight's own website to report that their breaker bars broke in the same way that Plaintiff's did on January 2nd, 2022. In fact, some

consumers even posted photographs of the failure to their breaker bars directly onto Harbor Freight's website, and their pictures reveal a fracture almost identical to the one that caused Nick Geraci's injuries. Those postings from Harbor Freight's website are shown below.





**Do not buy**
Chris, Sep 14, 2022

3/8 in. Drive 18 in. Ratcheting Breaker Bar

**WRITE REVIEW**

**Busted**
Bob, Jul 22, 2020

3/8 in. Drive 18 in. Ratcheting Breaker Bar

**WRITE REVIEW**



**Breaker bar broke!**
Allen, Nov 28, 2021

3/8 in. Drive 18 in. Ratcheting Breaker Bar

**WRITE REVIEW**

21.    On information and belief, Harbor Freight had additional notice and knowledge about the defects in its breaker bars including other sources such as actual custody of returned products that were broken by customers who returned them for a refund or replacement, as well as other communications with consumers and potentially even other claims and lawsuits for injuries.

22.    Tragically, Mr. Geraci did not know what Harbor Freight already knew about its defective and unreasonably dangerous ratcheting breaker bar at the time he bought it. Mr. Geraci purchased his breaker bar in-person at Harbor Freight's store in Olathe and did not have the benefit of having seen the reviews and photos posted by reviewers on Harbor Freight's website.

23.    For comparison with the above photos, below are pictures of Nick Geraci's breaker bar after the failure it experienced which caused his injuries.



24.    One side of the broken breaker bar ratcheting mechanism above shows some surface rust was because Mr. Geraci had to be rushed off to the hospital after injuring his eye without time to locate the piece, which was not retrieved from the area where he was working until a day or two after the injury, during which time it had rained outside.

25.     Plaintiff has suffered a variety of damages and losses as a direct and proximate result of the defective condition of the subject breaker bar, as pled more fully herein.  All of these harms and losses have been suffered both in the past and will continue to be suffered in the future.

26.     In the ordinary course of its business, Defendant Harbor Freight designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the subject breaker bar described more fully above.

### COUNT I: "Product Liability Claim" – Sounding in Strict Products Liability Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq.*

27.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

28.     The injuries to Plaintiff Nick Geraci resulted from the defective conditions of the subject breaker bar.

29.     The defective conditions of the breaker bar that were a cause of the injuries to Nick were unreasonably dangerous.

30.     The conditions of the Breaker bar that are complained of herein, existed at the time it left Defendant Harbor Freight's control.

31.     At all relevant times, the subject Breaker bar was in a defective and unreasonably dangerous condition by reason of its design and manufacturing, thereby exposing foreseeable users to unreasonable risk of harm, such as Plaintiff.

32.     The Breaker bar was further defective and unreasonably dangerous by reason of its lack of adequately designed warnings and instructions provided with the product at the time of sale and distribution.

33.     The Breaker bar was in an unsafe, defective, and unreasonably dangerous condition at the time it left Defendants' control.  The defective conditions which were responsible for Mr.

Geraci's injuries and were in substantially the same condition at the time of the incidents described herein, as they were in when the product left Defendant Harbor Freight's control.

34.    The subject breaker bar was expected to and did reach the usual consumers, handlers and persons coming into contact with the product – including Plaintiff – without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed and marketed by Defendant Harbor Freight.

35.    The Breaker bar's unsafe, defective, and inherently dangerous condition was a direct and proximate cause of the injuries suffered by Plaintiff.

36.    The design and manufacturing of the Breaker bar rendered it dangerous to an extent beyond that which would be contemplated by an ordinary consumer with ordinary knowledge common to the community as to its characteristics, even when used in a manner that was foreseeable to or reasonably anticipated by Defendant Harbor Freight.

37.    Mr. Nick Geraci's injuries, damages, and losses suffered thereby, resulted from a use of the breaker bar that was intended by and/or reasonably foreseeable to Defendant Harbor Freight.

38.    At all relevant times, the Breaker bar posed a risk of danger inherent in the design that was foreseeable to Harbor Freight, and which greatly outweighed the benefits of that design.

39.    The subject breaker bar lacked sufficient utility for any group of consumers, including Plaintiff.

40.    The breaker bar's design and manufacture were defective and unreasonably dangerous due to *inter alia*:

    a.    The design choice to incorporate a ratcheting mechanism into a breaker bar in the first instance, which may have rendered it insufficiently strong and robust

to handle the forces and stresses that a breaker bar is expected and intended to handle;

b.   To specific design of the ratcheting mechanism on the subject breaker bar was not designed with sufficient strength for use in a breaker bar application;

c.   The subject breaker bar did not contain adequate warnings or instructions about the design's strength limitations, and

d.   Alternatively, or in addition to the design defects above, the subject breaker bar contained a manufacturing defect in that there were areas of weakness, due to excess porosity, improper alloying, or other defects in the relevant manufacturing processes involved for the metallurgy and makeup of the various component parts of the ratcheting mechanism, that created areas that would fatigue and fracture or otherwise fail when it experience the kinds of forces that are intended and foreseeable for a breaker bar tool and it was these weak spots on which the tool failed while being used by Plaintiff as pled herein.

41.   As designed, manufactured, warned, sold, and supplied by Defendant, the subject breaker bar is defective and unreasonably dangerous and was so when it was placed into the stream of commerce by Defendant.

42.   Feasible available alternative designs and warnings existed that would have prevented Plaintiff's injuries.

43.   As a direct and proximate result of the defects in the design, manufacture and warnings of Defendant's breaker bar Plaintiff Nick Geraci was seriously injured and suffered the resulting damages and losses as pled herein. Such losses include, but are not limited to, incurring substantial medical expenses for care and treatment of his injuries both in the past and the future,

11

having to undergo painful and complex medical procedures and surgeries on his eye for treatment of his injuries, the loss of earnings and earnings capacity in the past and the future, severe pain, suffering, disfigurement, and loss of use of his left eye in the past and the future, and loss of the enjoyment of life in the past and in the future.

44.     As pled herein, Defendant Harbor Freight knew or should have known about the defective and unreasonably dangerous condition of the subject breaker bar well before it was purchased by Nick Geraci and, with respect to the design, manufacture, warning, instruction, marketing and sale of the subject breaker bar, Defendant Harbor Freight acted in a willful, wanton and reckless manner with respect to the safety of users of its ratcheting breaker bars sufficient to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for Judgment against Defendant on Count I of his Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages, for interest on any judgment entered, for his costs herein, and for such other and further relief as the Court deems just and proper.

## COUNT II: "Product Liability Claim" – Sounding in Negligence
## Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq.*

45.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

46.     The Defendant developed, designed, tested, assembled, manufactured, labeled, distributed, marketed, advertised and sold the subject breaker bar in the ordinary course of its business.

47.     Defendant, as a designer, manufacturer, marketer, distributor and seller of the subject breaker bar had a duty to use that degree of reasonable care that would be exercised by an

expert product manufacturer in the design, manufacture, testing, assembly, labeling, distribution, marketing, sale and post-sale conduct relating to such products, including the subject breaker bar.

48.     At the time Defendant sold the subject Breaker bar, it was in a defective and unreasonably dangerous condition by reason of its design and manufacturing, thereby exposing foreseeable users to unreasonable risk of harm, such as Plaintiff.  The breaker bar was further defective and unreasonably dangerous by reason of its lack of adequately designed warnings and instructions provided with the product at the time of sale and distribution.

49.     Defendant Harbor Freight had a duty to use that degree of skill, care, caution, and expertise as that of a reasonably prudent and careful expert product manufacturer to design, manufacture, market, and sell a product that was not unreasonably dangerous for its normal, intended use.

50.     The subject breaker bar was defective and unreasonably dangerous, and Defendant Harbor Freight knew or had reason to know that it was defective and unreasonably dangerous when used in the form and manner as provided by Defendant.

51.     Defendant Harbor Freight knew or should have known that its Breaker bar was in a defective condition and was and was unreasonably dangerous.

52.     Defendant Harbor Freight failed to complete adequate pre-market testing and post-market surveillance on the subject breaker bar.

53.     Defendant failed to use the degree of care, skill and learning that would be used by an ordinarily careful expert in Defendants' business in its design, manufacture, testing, assembly, labeling, distribution, marketing, sale, and post-sale of the subject breaker bar in a number of respects including, but not limited to, the following acts and omissions:

a.  Negligently designing, manufacturing, labeling, and selling the subject breaker bar in a defective condition that was unreasonably dangerous when put to reasonably anticipated uses when Defendant knew or by exercising due care could have discovered the subject product's dangerous condition;

b.  Negligently designing the subject breaker bar in ways that rendered it defective and unreasonably dangerous in numerous respects, including but not limited to: failing to comply with industry standards;

c.  Negligently, carelessly, or recklessly failing to adequately test and investigate the defective and unreasonably dangerous condition of the subject breaker bar;

d.  Failing to adequately test the subject breaker bar's performance in foreseeable real world uses for breaker bars;

e.  Failing to utilize one of the available and feasible alternative designs on the market for breaker bars and / or failing to design its own ratcheting breaker bar such that it would perform in a non-defective and reasonably safe fashion to those safer alternative non-ratcheting designs already on the market;

f.  Selling the subject product in a defective condition without giving reasonable warning of latent dangers in the reasonably foreseeable uses thereof – dangers Defendant knew or in the exercise of reasonable care could have known;

g.  Failing to conduct any post-sale warnings or recall campaigns on its defective and unreasonably dangerous breaker bars after learning that consumers were experiencing a number of failures in the product that posed an unreasonable risk of harm to other consumers and user like Plaintiff Nick Geraci;

h.  Failing to provide adequate warnings or disclosure of the dangerous defects in the subject breaker bar to Plaintiff after the time of its original sale but before Plaintiff's injuries, and

i.  Failing to discharge its duties to recall and retrofit under applicable law.

54.  As a direct and proximate result of Defendant's acts and omissions and those of its principals, agents, workers, servants, and/or employees, Nick Geraci was seriously injured and suffered the resulting damages and losses as pled herein. Such losses include, but are not limited to, incurring substantial medical expenses for care and treatment of his injuries both in the past and the future, having to undergo painful and involve medical procedures and surgeries on his left eye for treatment of his injuries, the loss of earnings and earnings capacity in the past and the future, severe pain, suffering, disfigurement, and loss of use of his left eye in the past and the future, and loss of the enjoyment of life in the past and in the future.

55.  As pled herein, Defendant Harbor Freight knew or should have known about the defective and unreasonably dangerous condition of the subject breaker bar well before it was purchased by Nick Geraci and, with respect to Defendant's acts and omissions and those of its principals, agents, workers, servants, and/or employees in the design, manufacture, warning, instruction, marketing and sale of the subject breaker bar – Defendant Harbor Freight acted in a willful, wanton and reckless manner with respect to the safety of users of its ratcheting breaker bars sufficient to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for Judgment against Defendant on Count II of his Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages,

for interest on any judgment entered, for his costs herein, and for such other and further relief as the Court deems just and proper.

## COUNT III: Breach of Warranty Claim
## Pursuant to the Kansas Consumer Protection Act, K.S.A. § 50-623, *et. seq.*

56.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

57.     Plaintiff Nick is a "consumer" of the subject breaker bar as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(c).

58.     Defendant Harbor Freight is a "supplier" of the subject breaker bar as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(j).

59.     The sale of the subject breaker bar by Defendant Harbor Freight was a "consumer transaction" as defined by the Kansas Consumer Protection Act, K.S.A. § 50-624(j).

60.     The condition of the subject breaker bar constituted various breaches of warranties under the Kansas Consumer Protection Act, and those breaches were a cause of the injuries to Nick Geraci and his resulting damages as pled herein. Those warranty breaches include both express and implied warranties as defined within the Kansas Consumer Protection Act for the reasons pled more fully herein as constituting the product's defective and unreasonably dangerous design and manufacturing, and Defendant Harbor Freight's negligence in the design, testing, marketing and sale of the subject Breaker bar loader, which are incorporated herein by reference.

61.     The sale of the subject breaker bar by Defendant Harbor Freight was a deceptive act as defined in the Kansas Consumer Protection Act, K.S.A. § 50-626(b), in various respects, including but not limited to the fact Defendant represented that the subject breaker bar was of a particular standard, grade, quality, style, or model when in fact its condition departed materially from the representations. Defendant Harbor Freight represented that the subject Breaker bar was

fit for its particular purpose when in fact it was not given its defective and unreasonably dangerous design that allowed the breaker to fail catastrophically while being used in a foreseeable in  event of a foreseeable and in-fact, intended manner. In other words, Defendant Harbor Freight represented that the subject Breaker bar:

      a.  had characteristics, uses, and benefits that it did not have;

      b.  was of a particular quality when it was of another that differed materially from the representation, and

      c.  was willfully misrepresented, by exaggeration, falsehood, innuendo, or ambiguity as to a material fact.

62.    In the alternative, the sale of the subject Breaker bar by Defendant Harbor Freight was a deceptive act as defined in the Kansas Consumer Protection Act, K.S.A. § 50-626(b), in that Defendant willfully failed to state a material fact, or willfully concealed, suppressed, or omitted a material fact when it sold the subject Breaker bar, namely that:

      a.  the Breaker bar was not reasonably safe for its intended use, which departed from industry and public safety standards as pled elsewhere herein;

      b.  this was particularly deceitful given the public's reasonable and well-known expectations that a product marketed as a "breaker bar" must be designed and manufactured to endure the forces and stresses which are necessary to perform such tasks as loosening lug nuts on a car or truck wheel, and

      c.  the breaker bar had not been adequately tested or evaluated for its performance in foreseeable and intended uses to determine whether it was reasonably safe for the user and consumer.

63.     The sale of the subject breaker bar by Defendant Harbor Freight was an unconscionable act or practice as defined in the Kansas Consumer Protection Act, K.S.A. § 50-627, when considering what the supplier knew or should have known, because, among other things and at a minimum, the suppliers made misleading statements of opinion on which consumers such as Nick Geraci were likely to rely on to their detriment and that of their friends or family or also used the product.

64.     As a direct and proximate result of the Defendant's violations of the Kansas Consumer Protection Act, plaintiffs were damaged, and seek all damages allowed pursuant to K.S.A. 50-634(b), including attorney's fees.

65.     Defendant Harbor Freights actions, and those of its principals, agents, workers, servants, and/or employees in the design, manufacture, warning, instruction, marketing and sale of the subject breaker bar, with respect to the consumer transaction pled herein constitute willful, wanton and reckless conduct with respect to the safety of users of its ratcheting breaker bars sufficient to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for Judgment against Defendant on Count III of his Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages, for interest on any judgment, for his costs herein and for such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**PURSUANT TO LOCAL RULE 40.2, PLAINTIFFS HEREBY REQUEST THAT THE PLACE OF TRIAL OF THIS MATTER BE KANSAS CITY, KANSAS.**

Respectfully submitted,

FIELDS LAW FIRM

*/s/ Benjamin C. Fields*

Benjamin C. Fields          KS   #22209
1600 Genessee Street, Suite 860
Kansas City, Missouri 64102
(816) 659-9970 – telephone
(816) 659-9969 – facsimile
ben@fieldslawkc.com